Oral argument, 15 minutes per side. Mr. Grostek for the appellate. Good morning. Good morning. Christian Grostek for Mr. Nesbitt. Mr. Jeffrey Ray, in this case, I'd like to reserve three minutes for rebuttal. You may, please proceed. Thank you. May it please the court. Mr. Ray was misinformed of the maximum sentence that he faced in this case. He was told it was 10 years on each of four counts for 40 years when it was actually 10 years on count one and 10 years on counts two through four. How was the judge supposed to know that at the time that advice was given? From the indictment, your honor. It's established by this court in the United States v. Ford that an indictment that charges simultaneous possession, counts two through four, possession of firearms on the same date, can't be varied by the prosecution, either at trial or at sentencing. But counsel, wasn't it still possible at trial to prove that those firearms or the ammunition that were discovered or seized on the same day could have been purchased on different days? It wasn't possible to vary from the indictment, Judge Daughtry, based on what this court said in the United States v. Ford. All the indictment said was that they were possessed. It didn't say anything about whether they'd been purchased at the same time, did it? That's correct. Couldn't the government have come in and shown that they were purchased on three different occasions? Not under the indictment as charged. And what this court said in the United States v. Ford is that unless there's an indication that the grand jury intended to indict three separate crimes, three separate instances of a violation of the statute, that the prosecution can't vary from that at trial. The decision in Ford is based on law that dates back decades now, which is the purpose of an indictment, which is to give the defendant... But the court said there wasn't a trial. That's correct, there wasn't a trial. But whether at trial or at sentencing, the prosecution isn't permitted to vary from what the indictment charges. Let me ask you that, and I can't say that I really looked at it in as much detail on this regard perhaps as I should, but a standard jury instruction says that if an indictment charges that an offense happened on a certain date, it's sufficient if it happened at or around that date. So why just would that not suffice if the government could show that he possessed one or more of these guns the day before? We know that they caught him with the guns on a certain day, but why is it a variance if they prove that he owned the gun a day or two before within this at or around instruction that's included in every criminal trial in this circuit? That's right, and that's exactly the situation that the court addressed in Ford and the Third Circuit in Frankenberry before that. What the court said is there's a difference in these kinds of cases because typically when we say this thing happened on May 1st and this other thing happened on May 1st, we're not worried about the possibility that these things will merge. So if there's a possibility that it happened on May 2nd instead of May 1st, we're just not worried about that. But when we're talking about possession of firearms where the unit of prosecution, as the Supreme Court's defined it, is the instance of possession, meaning not each individual firearm but each circumstance of possession, that the prosecution isn't allowed to vary from the dates that it charges. And the reasons for that are quite understandable, I'd submit, which are the purpose of indictment is to give notice to the defendant of what he's facing. Now, again, normally if we're talking about substantially different charges, when the dates vary slightly, the general rule is the defendant has notice of what he's being charged with. The defendant is able to defend himself and the attorney to research the circumstances of the case and decide how to defend himself. And if we're talking about a day later instead of a day earlier, that doesn't make much of a difference. In this case, it makes a huge difference. It makes the difference between whether he's facing two counts or four counts, whether he's facing two counts. Counsel, could we just maybe cut through to the nub of this whole thing? The standard that I understand you have to overcome now is proof that if he had known that he couldn't be convicted of more than one count, I mean, originally, they were going to let him plead to count one and count four. Is that correct? I believe that's correct. Under a plea agreement, and he decided then he wanted to go to trial, and then he changed his mind, and there was no agreement in the end, and so he just pleaded guilty to all four of those. And I should back up. I need to check the plea agreement again because I'm not actually certain that it did allow him to plead to simply two counts. It was one in four. I'm sorry.  One in four, I'm pretty certain. So here's the point. At this juncture, he has to show that but for whatever problem you're presenting here now, he would not have pleaded guilty. And the truth is that's going to be very difficult under these circumstances to prove because he was willing to plead guilty to 20 years' worth in the first place, and he ended up in the end pleading guilty and getting 20 years. I mean, what is there about this that shows me that but for the information he didn't have, he never would have entered a guilty plea? That's the standard if what you're trying to do is get the plea vacated. I would say two points, Judge Jotry. The first is the standard is slightly different, which is that we have to show a reasonable probability, which the court has defined as less than 50% the Supreme Court has defined. So I understand but for, but not in the preponderance of the evidence that that might imply. But what we do see from Mr. Ray's actions here is that he was certainly ambivalent about whether he would plead guilty or not. He was indicted in September, I believe. In November, he decided to plead guilty. In December, he decided not to. In January, he decided again. And in January, he was facing the possibility of 40 years in prison. That's a significant pressure to plead guilty. I don't think there's any dispute about that. The law defines it as such in United States v. Guerra, this court in Pitts v. United States, that misstatements of that degree regarding the maximum sentence might well influence, in the words of this court in Pitts, a defendant to plead guilty when he otherwise would not. When we put those two things together, we know his ambivalence. We know that this is a huge difference between what he actually faced and what he was told he faced. We're looking at a case where the maximum is an important thing here. There are certainly cases where a bank fraud case with a small loss amount where the maximum sentence is 30 years in prison, but everyone proceeding knows that it's hugely unlikely that the person would face anything like 30 years when he's sentenced. Here, that's not the case. Everyone's aware from the beginning that the maximum sentence is a very important thing. It will have a substantial effect on what the actual sentence is. So under this scenario, we know he's ambivalent. We know that there's a dramatic increase in the pressure being put on him to plead. Can I ask one more question? At the sentencing hearing, when he did plead guilty, he was told before he pleaded guilty that there was the possibility of 40 years' sentence. Is that right? That's correct. And he still pleaded guilty? That's correct. And he pleaded guilty without any agreement that he would get a lesser sentence. So how could he have been coerced into pleading guilty? Well, I'm not sure I understand the question, but our position is that when someone's told that they face 40 years in prison, as he was, that's significant pressure to plead guilty to obtain potential. He was told he faced 40 years based on his guilty plea. That's right. He went to trial, and we're going to give you a break if you plead guilty and you'll only get 20 years. That's not what he was told. He was told he was going to get a possible 40-year sentence when he pleaded guilty. Right, and as the government's pointed out, and I think this is true for every defendant, it's a combination of how likely am I to succeed at trial, but also what benefit might I receive by pleading guilty. When someone's told that they face a potential of 40 years in prison, the potential benefits are great, and I would have advised him that if he was facing 40 years. His guidelines range would start at 10 years less. It's possible that a district judge would sentence him to 40 years certainly, but he could quite reasonably get a break of 10 years or more from that. Doesn't the sentencing transcript give us another reason for why he chose to plead guilty? Doesn't Tina McFall's testimony at the sentencing hearing that the defendant, Ray, had contacted and written and spoken with her and had requested that she have two other individuals take the blame for ownership and that shortly before he pled, it was clear to him that the other individuals would not in fact take the blame? How do you get around that evidence at the sentencing hearing? Right. Fair question, absolutely. There's two things I'd say to that. The first is all those calls and letters were actually before he was even indicted federally. Those are all recordings from state jail. The record is at docket entry number 52. The letters are attached, and they're dated, for example, in May of 2012. But is when he asked for that to be done the issue before us, or is it when he found out that it would not in fact occur that makes the issue before us? Oh, certainly. No dispute with that. But there's no evidence in the record that it was between December when he decided not to plead and January when he decided to plead the second time after he'd first decided in November. Although that was four days before trial. It was. One would have assumed if somebody else was going to take the blame, they better have already come forward. Right. So he knows four days before trial they're not going to. That's true. That's absolutely true. And at the same time, and again, I agree with the government, what they said in their brief here, which is it's a combination of doubts about his ability to proceed at trial and the benefits that he thinks he could receive by pleading. And this is true for every defendant essentially, but one factor is absolutely his doubts about prevailing at trial. But he was ambivalent walking up to trial. We know that from November to December to January. We also know certainly if someone was going to step forward, they would do so by now. The other thing, though, is coming up to trial, now the reality of I'm facing 40 years in prison is happening. Help me, educate me on the distinction between your indictment argument under Ford and an indictment argument under Rosenberger that would say that these merge. Is that a part of the basis, the actual problem with an indictment itself that would not have assumed before indictment that those three counts would merge versus what you're saying under Ford, which is that the proof was at variance from the indictment? So yours is a variance argument, not a problem with the indictment argument. There's no problem with the indictment. I believe I understand the question, and I will ask for your assistance if I get it wrong. We can work together. Fair enough. We're not contending there's any problem with the indictment because multiplicitous charges can absolutely be made in an indictment. It's that they merge for purposes of conviction and sentencing actually. There's only one conviction on counts two through four, and there's only one sentence then on counts two. And at what point do you think that merger must occur and the defendant must be informed of that merger? Based on Ford, from the face of the indictment, he has to be told this is what you're facing, and the merger, it's the count. Let me tease out that question again actually. He doesn't face 10 years on each of those counts, so when he's informed of his maximum exposure, he has to be told it's 10 years on counts two through four collectively. But they don't merge for purposes of trial, unless the prosecution elects to try the case this way, until after trial, because the jury is allowed to convict on two and four and acquit on three, for example. But no matter whether they convict on one of counts two through four or whether they convict on all of them, it counts as one conviction and can only be sentenced once. So the first time he is informed of the potential sentence against him is when that merger occurs and the court has to correctly inform him at that point. And again, I think there's a little bit of nuance here. It's not that they merge yet, but it is clear at that time, when he's first informed from the indictment, that his maximum exposure on counts two through four is 10 years total, not 10 years on each one. Can I break in just a minute, Judge Strange? He has to know at what point now that there's going to be a merger? Based on Ford, when he's first informed of his maximum exposure, and certainly by the time of a plea. Here's the thing, though. Think for a minute about what his defense was. His defense was, these are not all my guns. Some of these belong to A. One or two of them belong to B. My defense is they happen to be there in my trailer, but they don't belong to me. Now, if this had gone to trial and he had raised that defense, there would have been all kinds of reasons that these things didn't merge. They had come in from different people under different circumstances. I mean, it seems to me that until you go to trial or until the state is presenting evidence at sentencing, the state still has, the government still has the ability to show that these are separate, unmerged counts. And all I would respond to, Judge Autry, I'm past my time, is that United States v. Ford says that, no, the prosecution is stuck with what the green jury charged. And just following up on that for one more moment, plain error review applies here. You agree with that? Yes, Your Honor. Have you found any cases in the whole United States where either a circuit or a district court has said that the judges have to give that advice that you're saying is so clear from Ford? In United States v. Herald, it wasn't in 922g count. It was a different statute, but in United States v. Herald, the court said it was error not to inform the defendant that his maximum exposure was less because of merged counts. And I'm not aware of any court in the United States saying the opposite. So you found one in 922g1, but not in 922. It's a different statute. And the difference is those counts don't automatically merge as lesser-included crimes, right? The difference in 922 counts? That's correct. That's correct. So aside from Herald, you can't find any cases either? That's correct. And as I said, though, I have not found any case anywhere saying the opposite. All right. Thank you. Thank you. May it please the Court. My name is Luke McLaurin, and I'm here on behalf of the United States. The defendant's convictions in this case shouldn't be affirmed because the district court properly complied with Rule 11 when it accepted the defendant's guilty plea. There is no dispute that the district court properly informed the defendant of the correct maximum penalties under 922g for the four counts charged in the indictment. The defendant's only claim is that the district court somehow erred when it failed to explicitly instruct the defendant that counts 2, 3, and 4 could merge for sentencing. And I emphasize could because there's a dispute between the defense and us as to whether those counts necessarily merged. Now, I think the defendant would have you read forward much more broadly than what it stands for. He's not saying they merged just for sentencing. He's saying they merged for conviction purposes as well, as I understood his argument. Yes, he's saying that they merged at the time the indictment was issued, and that's not what Ford says at all. Ford involved a case where somebody was charged with possessing a firearm on or about September 28th, and then evidence came out during trial that perhaps cast doubt upon that September 28th but clearly showed that he possessed it on August 9th. And the jury sent a question to the judge saying, is it okay if we find that he possessed it on August 9th? Does that fit within this count of the indictment? And the judge said okay, and the court said in the context of that case, that would be a variance to the indictment because the date was essential in that case. Here, what we have is that he was charged with possessing two firearms and ammunition on the same date. Now, that could have been, as we conceded at sentencing, it was essentially one 922G count, but it could not have been. And the reason it could not have been is because he could... But once you conceded it, when the minutes are entered and the judgment is entered, it could not be entered for guilty on four counts. Is that not correct? He could not be sentenced for those, yes, for those four. He was not. He could not be adjudged guilty of four separate counts. Correct? Once we conceded that they merged for purposes of sentencing, yes. Right. So if the minutes and the judgment reflect that he was adjudged guilty of four separate counts, then we have a problem. Correct? The way that that could be corrected is by vacating two of the counts and keeping the other one intact. That's the question. Is it possible that this whole thing could be solved by the United States conceding that two of those counts ought to be dismissed? Yes, this could be solved by vacating two of the counts. I mean, he was the question here is whether the district court aired in. . . I mean, the issue is the defendant has raised it, is whether the district court had some sort of special obligation to inform him at the time of the guilty plea that these counts were necessarily going to merge, and they weren't necessarily going to merge. Well, explain to us how they . . . You were just getting to that when you were asked a question. So explain to us how they aren't . . . the circumstances under which they would not merge in the face of at least your opposing counsel's construction of Ford. Well, very clearly in the sense that he was . . . For example, he was charged with possessing two different weapons. Some of the information we had indicated that one of those weapons, the High Point .40 caliber, was one he kept on his person when he was both inside the trailer in hiding and outside the trailer when he went out to get supplies and various items. The other firearm, the Ruger .38 caliber, was kept inside the trailer at all times for his protection. So it's very possible that he was possessing the .40 caliber outside the trailer in different locations on the same day as he was possessing and keeping and maintaining the .38 caliber inside the trailer. He would have been essentially possessing two different firearms in two different locations on the same day. That would be sufficient to support two different 922G charges in this case. So we're back to the same question. When is that proof required or the information required to be conveyed to the defendant? What's your position? Our position is that usually that's handled at sentencing. The case law all seems to indicate that that's handled at sentencing. I agree that it would have been better in this case, and in hindsight it would have been a better thing to clarify on the record that everyone believed that these later three counts were going to merge at the time he entered the guilty plea. That would have been a better practice, but I don't think that that was what was required. What the district court did wasn't incorrect at the time it was done.  Or would the district judge's advice be it might happen? The district judge's advice would probably be it might happen. At the plea taking? At what date would the district court give the advice that it might happen? I think certainly at the arraignment. Because when you're looking at the indictment, those charges could be separate offenses. They could also merge at sentencing. Okay, so we're beyond that. Yes. When does he have to inform correctly? The judge has to inform. At sentencing. At sentencing. At sentencing that has to be clear, because he can only be sentenced because the counts merge for purposes of sentencing. That's not the claim here. The claim is that the error occurred in not advising him of that possibility at the time he entered his plea, as I understand it. He was certainly, that possibility was inherent in what the district court said. The district court said you face a possible penalty on each of these counts. Does it mean that you're necessarily going to get the maximum penalty on each of these counts? I got that, but I don't understand there even being an argument about what the judge's advice is at the time of sentencing. The plea has already been tendered. The plea has been accepted, at least in most cases. So we're focusing, I think, on at the time that the plea was tendered, because the whole claim here is had he been advised properly at that time, he wouldn't have entered his plea. Assuming that I'm right about that, what I'm trying to figure out is was it clear from the indictment that under no circumstances could you stack those three charges because he possessed the weapons and the ammunition on the same day? No, it was not clear from the indictment. The reason for that is we don't know at that time whether, as you say, you're going to offer proof that on that day, because all the indictment says is he possessed it on a certain day, right? Yes. So all you have to show then at trial, had he gone to trial, or in connection with sentencing, is that he did possess them not on different days, but on different locations on the same day. Yes. And then they don't merge. Yes. So we're not really talking about the advice being improper as to the potential here. We're talking about the advice not being proper as to what might happen under a different set of circumstances unknown, apparently, to everybody at the time except maybe the U.S. attorney, right? I believe so. In this case, is there any suggestion that the U.S. attorney even knew that in fact that they could only prove that they were on the same day in the same location? There is no specific evidence in the record. Well, by the time the plea was taken, the opportunity to do that was completed, correct? I'm struggling with this. Yes. How could he prove it? I'm looking at Rosenbarger. Rosenbarger says from the 1970s, only one offense is charged under the terms of, I think, the predecessor 1202A1, regardless of the number of firearms involved, absent a showing that the firearms were stored or acquired at different times or places. By the time you take the plea, that showing should have already been made. It should have been made in the factual basis that those offenses were going to be treated as separate offenses. And I think part of the difficulty comes from the fact, Judge McKeegan, Judge Strange, and Judge Autry, that everybody at the time this plea was operating had an assumption that these counts would merge. I think that's part of the reason you don't have any objection about this in the record. In hindsight, it would have been better had it been clarified on the record. But everybody was operating under the assumption that counts 2, 3, and 4 were going to merge for sentencing. The defendant denies that. The defendant indicates that he was operating on the assumption that it was 40 years he was facing and that that's one of the reasons that he chose to plead because he thought it would be whittled down. Well, Your Honor, that's actually controverted by evidence. We have a recording of the defendant, a call he made to his girlfriend the day before he pled, explaining to her that he was not facing 40 years. In fact, she was concerned he was facing 40 years. He explains to her on the phone, not once, twice, that he's only facing 20 years. He explains very clearly, almost like a legal scholar, how these counts would merge for sentencing. He clearly understood that. Unfortunately, that recording is not in the record because this issue wasn't raised below. If the court believes that that information would be relevant and helpful for resolving this appeal, the government would be happy to supplement the record and provide that recording to the court. I would note that that recording has already been provided to defense counsel. It was provided as part of our discovery obligations prior to sentencing. But the situation that actually occurred was that everybody understood that these counts were going to merge. So we're back to the plain error analysis. Yes, we are. Was there an error? Maybe. Was it plain? Yes. But then you're on the third standard. What's your argument as to why plain error is not satisfied here? Well, I would like to talk about the third standard, but I do want to back up to the second standard because even if this was an error, I'm not sure that it's plain. The case law out there is somewhat ambiguous as to how and when these multiplicity issues should be resolved. Most of the case law suggests it should be resolved at sentencing. So I would suggest in light of that case law that's out there, in light of the fact that there's no other cases out there that have ever said that a defendant must be expressly informed that the counts are going to merge for sentencing, any error here was not plain. But moving on to the third prong. Before you go to the third prong, let's back up here just a second and look at the reality of how this works if you're a district judge. You say everybody knew these were going to merge. Are you including the judge in the everybody at that point? Yes, Your Honor. That had been made clear to chambers. It was a discussion off the record with counsel as to what the defendant was facing, yes. Because now you're injecting a whole other issue in this. Sometimes judges meet with counsel before a proceeding, sometimes they don't. So really to say that everybody knew and that the judge then was required to give certain advice, you'd have to assume that the judge made essentially an inquiry or an investigation as to what was going to be the situation on the location of these guns. Before he went out into court, or he'd have to do it in open court, and then he would give the advice that's being sought here based upon what he learned in open court, right? If I understand your question, I believe the answer is yes. So how can we say that the error here was plain when there's nothing that establishes that I'm aware of that a judge has to make that inquiry in any event? We'd be establishing a rule here that sets an entirely new regime for more intrusive involvement of judges into what's going on in the background that normally a judge at the time of taking a plea has no idea what's going on. I agree, Judge McKee. And if the court wants to make that clarification, it certainly can, but by doing so it would be necessarily saying that this error was not plain because it wasn't clear before today and before this case. And moving on to that third prong, which I think is really key here, is that even if the court does find that this is a plain error, the defendant has a really hard burden to meet. The Supreme Court has been crystal clear. The defendant must show that there would be a reasonable probability that he would not have pleaded guilty if he had been explicitly informed that these counts would merge for sentencing. The Supreme Court has said what that reasonable probability standard means is not just a conceivable likelihood that the outcome could be different, but a substantial likelihood that the outcome would be different. Here there is no evidence whatsoever to suggest that the defendant would have changed his decision about his plea had he been explicitly instructed that these counts would merge for sentencing. On the contrary, we have evidence from his own statements to his girlfriend on the phone where he tells her he understands that he's facing 20 years and he still decides to go ahead with the plea. That suggests that this merger of these counts had no effect whatsoever on his decision. And all of counsel's arguments about how this affected his decision to plead guilty, it's all just speculation. There's no evidence in the record. The defendant was informed in the PSR that the maximum would be 20 years. From a logistical standpoint, I would assume that part of our struggle is not just for your case, but to understand how this system should work appropriately. I would assume that you would agree with me that there might be a case where that sort of misinformation would make a difference in what a defendant chooses to plead to or not to plead to. Is that not true? Yes, it is. And I think that the best course of action, the course looking for what would be the best course of action from the government's point of view, is that these things should normally be better if they got clarified explicitly during the plea process. And I think they could be clarified in the sense that if you're accepting the plea and you're accepting the factual basis for that plea, that factual basis will show whether those counts necessarily merge or not. Because the factual basis will either have the information to show that they merge or it won't. Or they're not. Or they merge. Yes. And so I think, I mean, in the same way that once you get done with trial, the evidence either is enough to show that you have different offenses under Rosenbarger or it's not. Let me exploit it for just a second. Because I'm really stunned that the government shows up and says, well, as a court, we really should tell district judges what they should do better. Because of the problem of anticipating then what that advice, so to speak, which is absolutely dicta in anything we write in this particular case, then is or is not bearing on these district judges. Maybe what you're saying makes some sense. If there's a plea a few days before the trial, before the case was going to try it, because presumably by then the government knows exactly what witnesses they're going to put on and what they're going to say. But what if somebody enters a plea early on in the process, before the government has finalized its position on whether it's got a credible witness that can testify that this guy had that gun on another location on the same day? What's a district judge supposed to do at that point? Inquire into exactly what? First of all, the judge is apparently supposed to identify this issue. Secondly, then make a factual inquiry of the government as of this day, what do you think you're going to be able to prove down the road? And then say, all right, Mr. Defendant, based on what the government thinks they might be able to say, here is an alternative set of advice that I'm giving to you. Is that really what you're saying we should tell the judges? No, I understand your concern, Judge McKeague, about putting more onerous requirements on district judges to do a more thorough inquiry. I think that what we're suggesting is that this would get resolved naturally through the requirement that the judge has to assure himself that there is an adequate factual basis for the plea. Because when you're describing the factual basis for the plea, at that point... The adequate factual basis for the plea has little or nothing to do with whether the counts are ultimately going to merge for purposes of sentencing and or how many judgments you enter. All you have to establish is yes, he possessed the gun on that day. Period. Right? Yes. So how does that move the ball along? Well, if he's being charged with possessing multiple firearms on the same day, whether those firearms were possessed in different locations or were acquired at different points in time is going to be relevant for the purpose of assessing whether they're separate offenses. The responsibility is the government's. And the government, in arranging for the plea or if it's written a plea agreement, would be saying, like you did in this case, count one, count four. So your position would be it's not so much what the court has to say as by that point of plea taking, the government has to show its hand. The government has to say, we know two, three, and four merged. Correct? Or wrong? I think that would be fair because I think usually at that point the government does know whether certain counts are going to merge. I mean, there are many reasons why counts that could potentially merge might get charged separately. And I'm not going to get into all those reasons here, but usually by the time of the plea, in my experience and in my opinion, it should be relatively clear at that point which counts are going to merge. And it doesn't make any difference in your mind, as an AUSA, when that plea colloquy takes place? Well, it does make a difference, I mean, when that plea colloquy does take place. Yes, Judge Meade. I'm not trying to make life more difficult, but we are trying to respect it. It could take place before there's even an indictment. It could be in connection with a complaint and you've waived the indictment. Right? That's true, Your Honor. So at that point, now the government, as Judge Strand says, is supposed to show their hand? Really? Well, Your Honor, any time that a plea is taken, the district court has to assure itself that there's an adequate factual basis for the plea. So that's all I'm saying is that we would have that obligation at any point in time, whether the defendant pleads before indictment, whether he pleads the day before trial, we would still have that obligation, or the court would still have that obligation, to assure itself of an adequate factual basis, which the government usually assists the court with by providing a statement of the factual basis. So I'm not suggesting that the government is going to take on any extra burdens here. And again, it is our position that the district court here didn't actually err, that any error it might have made was not plain, especially in light of existing case law. And in light of the evidence in this case, or I should rather put the lack of evidence on the defendant's part, there is no probability, let alone a reasonable probability, that the outcome of this case would have been any different had the defendant been explicitly instructed at the plea hearing that counts 2, 3, and 4 would merge for purposes of sentencing. Thank you, Counsel. Thank you, Your Honor. Judge Dottry, do you have any questions? I don't. Thank you. I'd like to make just a couple points. One correction of the record, if I could, but I'll leave that aside. The government's arguing that they can make this decision about whether these counts merge, whether they're charging simultaneous possession or not, maybe after the grand jury issues its indictment, maybe at the time of a plea, maybe before sentencing. That's exactly why in Ford and in Frankenberry in the Third Circuit's case, the court said, no, these things merge based on the indictment, because that's not how we do things. The grand jury decides what counts to charge. The grand jury decides... But the merger there, or the question of a variance there was on the date of possession, right? That's correct. You can't change that. That's correct. Now, did it say anything about where the weapons were possessed as of the date of possession? What the court said was the government can't decide to choose substantially different instances of possession than what's charged, because that would be... Why is it a different incident of possession if you possessed it in the trailer or if you possessed it out in the back 40 shooting rabbits? If they're not different instances, then they merge anyway. The government says they are different because location can mean within the same 40 acres, apparently. That's not true under the case law. What case do you rely upon to say... Rosenberger and Adams and Thronberg and Verrecchia out of the First Circuit, they all established that we're talking about substantially different instances of possession, not simply did you take it over here or did you take it back here. If you buy a gun in Tennessee in the morning and you drive to Kentucky in the afternoon, and at that point you're charged with possessing that gun when you're in, obviously, Kentucky, in my example, the government is precluded by variance law from establishing that you actually possess the gun hundreds of miles away on the same day, that is an automatic merger in your opinion? That would be one instance of possession, that's correct. And the string site you just gave me, you say corroborates that? I believe it does. I absolutely believe it does. And the point, the core principle here is that it's the grand jury that decides what the charges are going to be. It's the grand jury between the government and the defendant. It's not the government's option later to decide, well, we think we want to charge more than what the grand jury decided. Just out of curiosity, did the grand jury here, I don't have the indictment right in front of me, I don't want to bring it up on the screen, did the grand jury charge the possession on a certain day and at a certain location or only on a certain day? Only on a certain day. So how can we go back and say that the government's hands are tied based on what the grand jury thought or more hopefully did when it doesn't say where the locations were? The government itself said so in docket entries 52 and 53. It said these things merged because of the simultaneous possession and it cited to the indictment. That's what the government's, it only cited the indictment. No other facts in the record. It didn't rely on the factual basis established at the plea. It cited to the indictment. And that's correct under the law. That's what Ford and Frankenberry say. It's correct under the law if they can't establish a different location. If the grand jury didn't charge a different location, that's correct. So now you're saying, Judge Dottry asked you earlier whether there was a defect in the indictment. And there would be a defect in the indictment if we affirmed, in your opinion, because the grand jury charged only one location? No. Even though they didn't say anything about a location? No, it's not defective because the government's allowed to pursue multiplicitous charges all the way through the entry of a conviction. It's just they merged. An indictment can charge a hundred different offenses and yet it's actually only one crime when we get down to the nub of it. That's what multiplicity allows the government to do. And does that make a difference in imprisonment, in your security clearance, depending upon the number of offenses of which you are convicted? It can, absolutely. Absolutely, yes. And I see my time is up. What's the authority for that? If you have one gun possession conviction, that that's going to result in one consequence, and if you have three, that's going to result in a different consequence? What's your authority for that? I point to United States v. Tan, which is out of the Third Circuit. I could get the pin site if you'd like. It's T-A-N-N. And in that case, they found plain error for entering multiple convictions in a 922 charge because of the collateral consequences that can occur from additional charges, the conviction being entered in the judgment when they actually march. Why wouldn't this case be corrected if the convictions on counts 2 and 3 were vacated? That would be one correction that's actually appropriate. Our contention is simply that he would not have pled at all if he had been told accurately what he was facing. You don't dispute the telephone call? I'm sorry. I've never seen that. I've never heard it. It's not in the record. And I wish I could address that, obviously, but I can't. I simply can't. And the one point – see, I'm out of time. The one point I wanted to make is I did pull out the plea agreement again. It's docket entry number 26, the first page. I believe it says he agrees to plead guilty to counts 1 through 4 and not just simply 1 and 4. All right. Thank you. Thank you. We note that you're appointed under the Civil Justice Act, Mr. Grostek, and we want to thank you for your service. You've done a really excellent job on behalf of your client, and we appreciate it, and I'm sure your client does as well. Thank you. My pleasure. Thank you.